IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**1:09CR--172**

|                                   |   |                          |
|-----------------------------------|---|--------------------------|
| UNITED STATES OF AMERICA          | : | No.                      |
|                                   | : |                          |
|                                   | : | **INDICTMENT**           |
| Plaintiff,                        | : |                          |
| vs.                               | : | Count One                |
|                                   | : | 18 U.S.C. § 371          |
| DARYL HAYNOR,                     | : |                          |
|                                   | : | Count Two                |
| and JON FLASK                     | : | 26 U.S.C. § 7212(a)      |
|                                   | : |                          |
| Defendants.                       | : | J. BECKWITH              |

THE GRAND JURY CHARGES THAT:

Unless stated otherwise, at all times relevant to this Indictment:

INTRODUCTION

1.     Beginning in or about 1996, and continuing until at least 2006, defendants DARYL

HAYNOR and JON FLASK and others marketed and implemented a tax shelter called the "Sale

Leaseback of Tenant Improvements Strategy" ("SLOTS"), which enabled various U.S. corporations

(the "SLOTS clients") to claim tax deductions totaling more than $240 million on U.S. corporate

income tax returns filed with the Internal Revenue Service ("IRS").

2.     The IRS was a constituent agency of the United States Department of Treasury

responsible for administering and enforcing the tax laws of the United States and collecting the

taxes owed to the Treasury of the United States by taxpayers, including both individuals and

corporations.

3.      Between about 1999 and 2004, the IRS audited certain SLOTS clients. During at least three of these audits, defendants DARYL HAYNOR and JON FLASK and others made presentations to the IRS on behalf of the SLOTS clients. During these presentations, false and misleading statements were made to the IRS concerning the SLOTS transactions.

PARTIES, PERSONS AND ENTITIES

4.      Defendant DARYL HAYNOR was a tax professional and partner at Accounting Firm A and worked at the firm's Tysons Corner, Virginia office. Beginning in or about 1996, defendant DARYL HAYNOR and others at Accounting Firm A designed the SLOTS tax shelter. Between 1996 and 2002, defendant DARYL HAYNOR and others at Accounting Firm A marketed SLOTS transactions to clients of the firm. During this time period, defendant DARYL HAYNOR was the firm's "National Product Co-Champion" of SLOTS. Defendant DARYL HAYNOR currently resides in Oakton, Virginia.

5.      TransCapital Corporation was a company based in or around Reston, Virginia (referred to hereinafter, collectively with certain of its affiliate companies, as "TransCapital"). According to its website, TransCapital was a "tax-advantaged investments" company, which sold to its clients various "investment solutions," including "leasing portfolios, tax credits, and foreign investments." Beginning in or about 1996, TransCapital began marketing and implementing SLOTS transactions with various partners of Accounting Firm A, including defendant DARYL HAYNOR. In exchange for implementing SLOTS transactions, SLOTS clients paid fees to TransCapital.

6.      Defendant JON FLASK was an attorney and partner at Law Firm A, based in Vienna, Virginia. From at least the mid-1990s, defendant JON FLASK was an attorney for

2

TransCapital. Beginning in or about 1996, defendant JON FLASK worked with defendant DARYL HAYNOR, and with others at Accounting Firm A as well as TransCapital, to market and implement SLOTS transactions. Apart from his role as an attorney for TransCapital, for which Law Firm A was paid legal fees, defendant JON FLASK was personally paid separate "consulting fees" and commissions by various TransCapital entities. These consulting fees and commissions represented defendant JON FLASK's share of fees paid to TransCapital for implementing SLOTS transactions. Defendant JON FLASK currently resides in Daufuske Island, South Carolina.

7.     Michael Parker, a co-conspirator not named as a defendant herein, was employed by TransCapital from 1998 through 2006, and was the company's chief operating officer. During his employment at TransCapital, Michael Parker marketed and implemented SLOTS transactions with defendants DARYL HAYNOR and JON FLASK and others.

8.     As detailed below, TransCapital would form an affiliated entity, with little or no assets of its own, for the sole purpose of implementing each SLOTS transaction (referred to hereinafter as a "Single Purpose Entity").

THE SLOTS TAX SHELTER

9.     Beginning in or about 1996, and continuing until at least 2006, defendants DARYL HAYNOR and JON FLASK, together with Michael Parker and others, marketed and implemented at least eight SLOTS transactions, generating federal income tax deductions for at least six corporations, each a client of Accounting Firm A. These SLOTS clients include Corporation A, Corporation B, Corporation C, and Corporation D.

10.     In each SLOTS transaction, defendant DARYL HAYNOR and a SLOTS team at Accounting Firm A would assist the SLOTS client in purportedly selling certain assets called

3

"leasehold improvements" to a Single Purpose Entity affiliated with TransCapital. Immediately

thereafter, that Single Purpose Entity would purportedly lease the leasehold improvements it had

purportedly purchased back to the SLOTS client. Traditionally, such a transaction is known as a

"sale/leaseback."

11.    Where a company operates a business out of a leased building, leasehold

improvements ("LHI") are the items that the company installs into the building for the purpose of

conducting its business. These items include drywall, metal wall studs, ceramic tile, rough

carpentry, metal decking, ceiling and wall insulation, glass and glazing, plumbing materials, heating,

ventilation and air conditioning systems and electrical work. The costs incurred to install the LHI

are reflected as assets on the company's books.

12.    In connection with each SLOTS transaction, defendant DARYL HAYNOR and

others at Accounting Firm A and TransCapital arranged for appraisals of the LHI, which purported

to determine market value for the LHI. In each case, the SLOTS client would purportedly sell the

LHI for this amount, which was always significantly less than the value of the LHI as reflected on

the SLOTS client's books. The difference between the purported market value and the book value

of each client's LHI comprised the loss that the SLOTS client claimed as a tax deduction.

13.    In each SLOTS transaction, the Single Purpose Entity purportedly purchased the LHI

with funds from a financial institution involved in the transaction. In at least seven of the SLOTS

transactions, each Single Purpose Entity obtained these funds by selling to the financial institution

the rights to the lease payments under the purported LHI lease. Each sale of the rights to the

purported lease payments in this manner created significant income for the Single Purpose Entity,

which the Single Purpose Entity was required to report on its own federal corporate income tax

4

return, and which accordingly would have resulted in a significant income tax liability to the Single

Purpose Entity.

14.  Defendant JON FLASK, assisted by defendant DARYL HAYNOR and others,

designed and implemented a plan to eliminate the Single Purpose Entities' income tax liability by

having each entity purportedly resell its LHI to an unrelated third-party at a substantial loss.

15.  Notwithstanding these second sales, each SLOTS client retained an "Early Buy-Out"

option under the purported LHI leases, that is, a right to purportedly buy back the LHI from the

corresponding Single Purpose Entity at a specified price at a certain point in the lease term.

THE IRS AUDITS

16.  By 2002, the first corporation to engage in a SLOTS transaction, Corporation A, was

under audit by the IRS.  Corporation A's SLOTS transactions and related income tax deduction

were examined by IRS agents and attorneys.  During the course of this audit, the IRS issued a

memorandum called a "Field Service Advice," which stated that Corporation A was not entitled to

claim the tax loss generated by SLOTS because the purported sale of its LHI was not a bona fide

sale.  Consistent with the Field Service Advice, IRS auditors ultimately disallowed the tax

deduction claimed by Corporation A.

17.  The IRS published the Field Service Advice in or about April 2002.

18.  Between May 2002 and 2004, at least four additional SLOTS clients were audited

by the IRS.  In the course of at least three of these audits, the IRS held meetings in or about

November 2003 through in or about July 2004 with representatives of the SLOTS clients, including

defendant DARYL HAYNOR.  At defendant DARYL HAYNOR's request, defendant JON

FLASK and Michael Parker also participated in these meetings.

5

## COUNT ONE

### (Conspiracy to Defraud the United States)

The Grand Jury hereby incorporates and realleges the factual allegations contained in paragraphs 1 through 18 of this Indictment.

19.     From at least in or about 1998, and continuing up to at least about November 2006, in Cincinnati, Ohio, within the Southern District of Ohio, and elsewhere, the defendants,

**DARYL HAYNOR**
**and**
**JON FLASK**

did knowingly combine, conspire, confederate, and agree together and with each other, and with other persons both known and unknown to the Grand Jury, including Michael Parker, a co-conspirator not named as a defendant herein, to defraud the United States and the IRS for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of the IRS in the ascertainment, computation, assessment and collection of federal income taxes.

### MANNER AND MEANS OF THE CONSPIRACY

Among the means by which the defendants DARYL HAYNOR and JON FLASK, and their co-conspirators, would and did carry out the objectives of the conspiracy were the following:

20.     They would and did design, market, and implement SLOTS tax shelter transactions, and make presentations to the IRS on behalf of SLOTS clients, in ways that made it difficult for the IRS to detect the second sales of LHI.

21.     They would and did withhold significant facts from the SLOTS clients during the marketing of SLOTS for the purpose of ultimately withholding these facts from the the IRS, including

6

that they intended to have the Single Purpose Entities engage in second sales of the LHI to various purported third-parties.

22.     They would and did assist in crafting tax opinion letters designed to shield the SLOTS clients from tax penalties, knowing that these letters contained false and misleading information and omitted material facts, including that the Single Purpose Entities intended to engage in the second sales.

23.     They would and did provide false, fraudulent, and misleading information to the IRS in connection with audits of SLOTS clients.

24.     They would and did make false and misleading statements during meetings with IRS agents and attorneys.

25.     They would and did provide false, fraudulent, and misleading information to the SLOTS clients in connection with the Early Buy-Out option and concerning other aspects of the SLOTS transactions for the purpose of ultimately withholding from the IRS facts concerning the second sales of the LHI.

## OVERT ACTS

26.     In furtherance of the conspiracy and to accomplish its objectives in Cincinnati, Ohio, within the Southern District of Ohio, and elsewhere, the defendants DARYL HAYNOR and JON FLASK, and their co-conspirators, committed and caused to be committed overt acts, including but not limited to the following:

a)      On or about April 24, 2000, defendant DARYL HAYNOR caused Accounting Firm A to issue a tax opinion letter relating to the SLOTS transaction for Corporation B.

b)    On or about June 5, 2000, defendants DARYL HAYNOR and JON FLASK made a SLOTS marketing presentation to Corporation D in Cincinnati, Ohio.

c)    On or about March 7, 2001, defendant DARYL HAYNOR caused Accounting Firm A to issue a tax opinion letter relating to SLOTS transactions for Corporation C.

d)    On or about June 15, 2001, defendant DARYL HAYNOR caused Accounting Firm A to issue a second tax opinion letter relating to a SLOTS transaction for Corporation C.

e)    On or about April 10, 2002, defendant DARYL HAYNOR caused Accounting Firm A to issue a tax opinion letter relating to the SLOTS transaction for Corporation D.

f)    On or about November 4, 2003, defendants DARYL HAYNOR and JON FLASK, and Michael Parker, a co-conspirator not named as a defendant herein, participated in a conference call regarding an upcoming meeting with the IRS concerning a SLOTS transaction implemented for Corporation D.

g)    On or about November 6, 2003, defendants DARYL HAYNOR and JON FLASK, and Michael Parker, a co-conspirator not named as a defendant herein, participated in a meeting held in Cincinnati, Ohio with IRS agents and attorneys in connection with an audit of Corporation D's income tax liabilities.

h)    On or about March 22, 2004, defendants DARYL HAYNOR and JON FLASK, and Michael Parker, a co-conspirator not named as a defendant herein, participated in a conference call regarding an upcoming meeting with the IRS concerning SLOTS transactions implemented for Corporation C.

8

i)      On or about March 23, 2004, defendants DARYL HAYNOR and JON

FLASK, and Michael Parker, a co-conspirator not named as a defendant herein, participated in a

meeting held in or around Eden Prairie, Minnesota with IRS agents and attorneys in connection with

an audit of Corporation C's income tax liabilities.

j)      On or about July 20, 2004, defendants DARYL HAYNOR and JON FLASK,

and Michael Parker, a co-conspirator not named as a defendant herein, participated in a conference

call regarding an upcoming meeting with the IRS concerning a SLOTS transaction implemented for

Corporation B.

k)      On or about July 23, 2004, defendant DARYL HAYNOR caused to be

transmitted documents to Corporation B concerning its SLOTS transaction.

l)      On or about July 23, 2004, defendants DARYL HAYNOR and JON FLASK,

and Michael Parker, a co-conspirator not named as a defendant herein, participated in a meeting

held in or around Chesapeake, Virginia with IRS agents and attorneys in connection with an audit of

Corporation B's income tax liabilities.

m)      On or about October 27, 2005, defendant JON FLASK and Michael Parker, a

co-conspirator not named as a defendant herein, caused a Single Purpose Entity to send

correspondence and documents to Corporation B relating to its Early Buy-Out option.

n)      On or about December 26, 2005, defendant JON FLASK and Michael Parker,

a co-conspirator not named as a defendant herein, caused a Single Purpose Entity to send

correspondence and documents to Corporation C relating to its Early Buy-Out option.

9

o)    On or about February 23, 2006, defendant JON FLASK and Michael Parker, a co-conspirator not named as a defendant herein, caused a Single Purpose Entity to send correspondence and documents to Corporation C relating to its Early Buy-Out option.

p)    On or about May 30, 2006, defendant JON FLASK and Michael Parker, a co-conspirator not named as a defendant herein, caused a Single Purpose Entity to send correspondence and documents to Corporation C relating to its Early Buy-Out option.

q)    On or about October 31, 2006, defendant JON FLASK and Michael Parker, a co-conspirator not named as a defendant herein, caused a Single Purpose Entity to send correspondence and documents to Corporation D relating to its Early Buy-Out option.

r)    On or about November 10, 2006, Michael Parker, a co-conspirator not named as a defendant herein, made false statements in a voicemail message to a corporate officer of Corporation D concerning that SLOTS client's Early Buy-Out option.

In violation of Title 18, United States Code, Section 371.

## COUNT TWO

**(Corrupt Endeavor to Obstruct and Impede the Internal Revenue Laws)**

The Grand Jury further charges:

27.    The allegations set forth in paragraphs 1 through 18 of this Indictment are repeated and re-alleged as if fully set forth herein.

28.    From on or about November 4, 2003, and continuing to on or about July 23, 2004, in Cincinnati, Ohio, within the Southern District of Ohio, and elsewhere, the defendants,

**DARYL HAYNOR**
**and**
**JON FLASK**

10

did each corruptly endeavor to obstruct and impede the due administration of the Internal Revenue Laws of the United States, as set forth below.

29.     On or about November 6, 2003, during an audit of Corporation D's income tax liabilities, defendants DARYL HAYNOR and JON FLASK made, and caused to be made, false and misleading statements to the IRS, including statements indicating that a Single Purpose Entity retained ownership of Corporation D's LHI when, in fact, as defendants DARYL HAYNOR and JON FLASK well knew and believed, the Single Purpose Entity had engaged in a second sale of Corporation D's LHI for the purpose of generating a tax loss.

30.     On or about March 23, 2004, during an audit of Corporation C's income tax liabilities, defendants DARYL HAYNOR and JON FLASK made, and caused to be made, false and misleading statements to the IRS, including statements indicating that three different Single Purpose Entities retained ownership of Corporation C's LHI and that they had entered into the SLOTS transactions with the expectation of owning the LHI indefinitely when, in fact, as defendants DARYL HAYNOR and JON FLASK well knew and believed, the Single Purpose Entities had engaged in second sales of Corporation C's LHI for the purpose of generating tax losses, as had been planned from the outset of the SLOTS transactions.

31.     On or about July 23, 2004, during an audit of Corporation B's income tax liabilities, defendants DARYL HAYNOR and JON FLASK made, and caused to be made, false and misleading statements to the IRS, including statements indicating that a Single Purpose Entity retained ownership of Corporation B's LHI and that it had entered into the SLOTS transaction with the expectation of earning a profit when, in fact, as defendants DARYL HAYNOR and JON FLASK well knew and believed, the Single Purpose Entity had engaged in a second sale of

11

Corporation B's LHI for the purpose of generating a tax loss, as had been planned from the outset of the SLOTS transaction.

In violation of Title 26, United States Code, Section 7212(a).

A TRUE BILL

GRAND JURY FOREPERSON

CARTER M. STEWART
UNITED STATES ATTORNEY

ANTHONY SPRINGER
Deputy Criminal Chief

12